IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT HUGHES,                          )
                                        )
                    Plaintiff           )
                                        )
        vs.                             )        Civil Action No. 07-55J
                                        )
PUSHKALAI PILLAI, M.D.; J. VISINSKY;)            Judge Arthur J. Schwab/
A. FOMEL; S. BURKE; J. BEARD; ANY   )            Magistrate Judge Amy Reynolds Hay
OTHER MEMBER OF THE PA DOC,         )
BUREAU OF HEALTH CARE SERVICES,)
                                        )
                    Defendants    )             RE:  Dkt. No. [41]

## REPORT AND RECOMMENDATION

### RECOMMENDATION

It is respectfully recommended that Defendant Pillai's motion to dismiss be granted and
that the Eighth Amendment claim against her be dismissed with prejudice and that the retaliation
claim against her be dismissed without prejudice.  In addition, it is recommended that pursuant to
the PLRA, all of the Eighth Amendment claims against all of the DOC defendants be dismissed
with prejudice and that all of the retaliation claims/failure to remedy the retaliation claims against
the DOC defendants be dismissed without prejudice.  All of the claims against all of the
Defendants being dismissed, the case should be closed.

### REPORT

Plaintiff, Robert Hughes, is a prisoner currently in the custody of the Pennsylvania
Department of Corrections in the State Correctional Institution (SCI) at Albion.  He instituted
this action *pro se* pursuant to 42 U.S.C. § 1983, initially filing the complaint in state court and
asserting an 8th Amendment violation for deliberate indifference to his medical needs.  The
Defendants removed the action to federal court where Plaintiff subsequently amended and

supplemented his complaint, adding charges that he was being subjected to retaliatory segregation and transfer, in violation of his constitutional rights.

**Relevant Procedural History**

Plaintiff filed an original complaint in state court. Dkt. [2-3]. The complaint had exhibits attached. Defendant Pillai filed a notice of removal. Dkt. [2]. After Defendants filed motions to dismiss, Plaintiff filed a first amended complaint with more attached exhibits and which added some defendants and a retaliation claim against the defendants. Dkt. [17]. Subsequently, with leave of court, Plaintiff filed a second amended complaint, Dkt. [39], with additional exhibits and which incorporated the exhibits he had filed previously with the court. See Dkt. [39] at 1 ("Please note that a true and correct copy of Exhibits 1 - 19 have been previously served upon Defense Counsel and filed with the court. The 'new exhibits . . . are attached hereto.")(emphasis deleted and some quotation marks omitted).[1] The second amended complaint is the operative complaint. That complaint names as defendants at least ten Department of Corrections ("DOC") employees and one independent contractor. The independent contractor is Dr. Pushkalai Pillai, a psychiatrist who treated Plaintiff. The complaint concerns actions allegedly taken by the Defendants when Plaintiff was housed at SCI-Somerset. Plaintiff is currently housed at SCI-Albion. He alleges that Dr. Pillai, after a brief examination of Plaintiff, removed Plaintiff from his Klonopin, a psychotropic drug that Plaintiff had been taking for a very long time. Plaintiff alleges that Dr. Pillai did so because of a "policy of the prison facility to not prescribe benzo[diazepine] class medication because of cost and security concerns[,"] Dkt. [35] at 2, ¶ 3

---

[1] Although Plaintiff did not use the word "incorporate," it is clear that this was Plaintiff's intention as he cites to the first nineteen exhibits throughout his second amended complaint.

(some emphases and quotation marks deleted),[2] and instead Dr. Pillai prescribed other psychotropic drugs for Plaintiff even though he had been receiving Klonopin for roughly 20 years and it had worked well for him. Plaintiff alleges that Dr. Pillai's actions in doing so constituted deliberate indifference in violation of his constitutional rights to be free of cruel and unusual punishment.

After Plaintiff filed grievances and the instant lawsuit, Dr. Pillai is alleged to have requested a separation[3] from Plaintiff, meaning that he would have to be transferred out of SCI-Somerset. Plaintiff contends that Dr. Pillai's request was retaliation against him for the filing of this suit and for filing of grievances. See Dkt. [39] at 6, ¶ 25.

Dr. Pillai filed a motion to dismiss the operative complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), Dkt. [41], and a brief in support. Dkt. [42]. Plaintiff filed a response to the motion to dismiss, which had appended to it documentary materials. Dkt. [46]. Defendant Pillai filed, with leave of court, a reply brief. Dkt. [56].

**Standard of Review for Motions to Dismiss**

As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at

---

[2] The Court takes judicial notice of the fact that "[c]ommonly used benzodiazepines include clonazepam (*Klonopin*), alprazolam (*Xanax*), diazepam (*Valium*), and lorazepam (*Ativan*)."

http://www.nimh.nih.gov/health/publications/medications/complete-publication.shtml

(Site last visited 2/20/2008).

[3] A separation, "as its name suggests, is a document which states that an inmate should be separated from another inmate" or staff member. Morton v. Vaughn, No. Civ. 93-6691, 1994 WL 172718 at *5 n. 2 (E.D.Pa. May 4, 1994).

1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).   Under this standard, the court must, as a general rule, accept as true all factual allegations of the Complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  Nevertheless, under the 12(b)(6) standard, a "court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), *amended by,* 275 F.3d 1187 (9th Cir. 2001).  Nor must the Court accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp., 127 S. Ct. at 1965 (citing Papasan v. Allain, 478 U.S.  265, 286 (1986)).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6).  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994).  In addition, the Court of Appeals in Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004),  held that " defendant may submit an indisputably authentic [document] to the court to be considered on a motion to dismiss[.]"

The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative

level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-1965 (2007). Or put another way, a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

In addition, because Plaintiff is a prisoner proceeding in forma pauperis, the screening provisions of the Prison Litigation Reform Act ("PLRA") found at 28 U.S.C. § 1915(e)[4] apply. Furthermore, because Plaintiff is a prisoner who has brought an action with respect to prison conditions, the PLRA screening provisions of 42 U.S.C. § 1997e(c) apply.[5] Pursuant to these screening provisions, a court is obliged to sua sponte dismiss complaints that are frivolous, malicious or that fail to state a claim upon which relief can be granted at any point in the

---

[4]  28 U.S.C. §1915(e)(2) provides in relevant part that

   (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case **at any time** if the court determines that--
         (A) the allegation of poverty is untrue; or
         (B) the action or appeal--
                        (i) is frivolous or malicious;
                        (ii) fails to state a claim on which relief may be granted;
      or
                        (iii) seeks monetary relief against a defendant who is immune from such relief.

(emphasis added).

[5]  42 U.S.C. § 1997e(c)(1) provides in relevant part that

   (1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

litigation process. The court's obligation to dismiss a complaint under the PLRA screening

provisions is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez

v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal

which was not relied upon by a defendant in a motion to dismiss, or, if a defendant did not even

file such a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such

ground pursuant to the screening provisions of the PLRA. See Lopez.

**Discussion**

## 1. Dr. Pillai and the Eighth Amendment Claim

In her motion to dismiss, Dr. Pillai points out that Plaintiff has failed to state a claim for

relief under the Eighth Amendment with respect to his claim about being denied the Klonopin

because, at most, Plaintiff's allegations amount not to a denial of medical care in violation of the

Eighth Amendment but a disagreement as to the proper course of treatment that Dr. Pillai ordered

for Plaintiff when she ordered a different psychotropic medication for Plaintiff rather than the

Klonopin. Dr. Pillai is correct.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor

excessive fines imposed, nor cruel and unusual punishments inflicted."[6] The Supreme Court has

---

[6] Technically, the Eighth Amendment applies to the states through the Fourteenth Amendment. See
Estelle v. Gamble, 429 U.S. 97, 101-02 (1976) (citing Robinson v. California, 370 U.S. 660 (1962)). The
standards of the Eighth Amendment barring the federal government from inflicting cruel and unusual
punishments are the standards applicable to the States through incorporation by the Fourteenth
Amendment's due process clause. See Sistrunk v. Lyons, 646 F.2d 64, 66-67 (3d Cir. 1981)(citing
Robinson v. California). The standards under the Eighth Amendment and the standards under the
Fourteenth Amendment are fundamentally identical. Furman v. Georgia, 408 U.S. 238, 422 n.4
(1972)(Blackmun, J., dissenting) ("the tests for applying these two provisions are fundamentally
identical."). Given this, the court will not separately analyze the Eighth and Fourteenth Amendments.
Rather, the court will analyze Plaintiff's claims utilizing the standards of the Eighth Amendment and
cases construing those standards.

6

explained that analysis of a violation of the Eighth Amendment involves a two pronged inquiry: 1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment and 2) a "subjective inquiry" into the mind of the person inflicting the harm. See Wilson v. Seiter, 501 U.S. 294 (1991). Accord Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000)("A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components–one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect."). The Court of Appeals for the Third Circuit has explained the objective element as requiring proof that "the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. . . . If not our inquiry is at an end." Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000). Only if the harm suffered is sufficiently serious does the court then turn to analyze the subjective element which the Third Circuit has described as determining whether the prison "officials acted with a sufficiently culpable state of mind. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain." Id. (citations omitted).

Although the "objective component of a cruel-and-unusual- punishment claim focuses on the harm done." Sims v. Artuz, 230 F.3d at 21, the Third Circuit has cautioned that "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Fuentes v. Wagner, 206 F.3d at 344 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)) (internal quotes omitted). In determining whether a harm intended as punishment "was sufficiently serious to fall within the Eighth Amendment's zone of protections", Fuentes v. Wagner, 206 F.3d at 344, the Third Circuit Court of Appeals has described the inquiry as whether the prisoner has been deprived of the "minimal civilized measure of life's

necessities." <u>Young v. Quinlan</u>, 960 F.2d 351, 359 (3d Cir. 1992) *superseded by statute on other grounds as stated in*, <u>Ghana v. Holland</u>, 226 F.3d 175, 184 (3d Cir. 2000). Proving that one has been deprived of the minimal civilized measure of life's necessities requires proof that one has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety" from physical assault. <u>Griffin v. Vaughn</u>, 112 F.3d 703, 709 (3d Cir. 1997).

As to the subjective component, in cases involving the denial of medical care, the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." <u>Estelle</u>, 429 U.S. at 104 (internal quotations omitted). The Court has held that "deliberate indifference" occurs when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). As a corollary of the deliberate indifference standard, mere negligence by staff at the prison, medical personnel and physicians in treating prisoners is not sufficient to state an Eighth Amendment violation. <u>Estelle</u>, 429 U.S. at 105-06. The Supreme Court has held that

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Id.

Instantly, Plaintiff alleges that he was on Klonopin or a benzo class medication for the treatment of his mental illness for the past 17 years. Dkt. [39] at 1. He even notes that at prior points in his history of treating with Dr. Pillai, she had prescribed Klonopin for him. Id., at 4, ¶19. However, he alleges that roughly six days after he was transferred into SCI-Somerset, i.e., on August 31, 2006, Dr. Pillai examined him briefly and informed Plaintiff that "it is the policy of the prison facility to not prescribe benzo-class medication because of cost and security concerns." Dkt. [39] at 2, ¶ 3. Plaintiff attached exhibits, indicating that Dr. Pillai did prescribe other psychotropic medications for Plaintiff. See Dkt. [2-3] at 12 (after Dr. Pillai informed Plaintiff that she was discontinuing his Klonopin, she stated, "we can try 'Paxil' . . ."); Dkt. [17] at 8 (grievance complaining that although he is taking psychotropic medications, and, consequently, he should be seen by psychiatrist every thirty days, he has not been seen by a psychiatrist in 3 months). Rather than giving the newly prescribed drugs a chance, Plaintiff immediately filed on September 1, 2006 a complaint against Dr. Pillai with the Pennsylvania Office of Occupational Affairs. Dkt. [39] at 2, ¶ 4. On September 6, 2006, Plaintiff filed a grievance against Dr. Pillai, wherein he complained that Dr. Pillai had denied him his Klonopin for non-medical reasons, i.e., for security and cost concerns. Plaintiff asserts that DOC has a policy of not using Benzo class medications based on cost considerations and this policy constitutes a violation of the Eighth Amendment, at least as applied to his situation. Plaintiff complains that previously he had tried other psychotropic medications but that they proved ineffective and only benzo class medications proved effective in controlling his psychiatric problems. Plaintiff alleges that he provided an "affidavit" to Dr. Pillai, wherein he recounted his

experiences while not being on the Klonopin. Dkt. [39] at 4, ¶ 17, citing Exhibit 11 (which is found at Dkt. [2-3] at 29). Exhibit 11 indicates that it was served upon Staff on December 5, 2006. Further the exhibits indicate that in response, Dr. Pillai prescribed Klonopin for Plaintiff at 0.25 mg. to be taken two times a day. On December 6, 2006, Plaintiff sent a request to Dr. Pillai to increase the level of Klonopin back to the "therapeutic" levels he had been taking for 20 years, i.e., 2 mg. taken two times a day. Plaintiff notes that in response to his request, Dr. Pillai explained that just "because you were on it [i.e., Klonopin] for 20 years, you don't have to continue the next 50 yrs." Dkt. [2-3] at 30, Ex. 12. Plaintiff contends that Dr. Pillai's later act in ordering a small dose of Klonopin made no medical sense and was an attempt to cover up Dr. Pillai's earlier "illegal act" of denying him his Klonopin.

The court has no hesitancy in concluding that these fact allegations, which do not contradict the facts supported by the exhibits, are simply not "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-1965 (2007). This is because Plaintiff does not allege a denial of medical care, i.e., he does not allege that he was denied psychotropic medication, rather he alleges that he was denied Klonopin, which he feels was effective and that he was denied such, based not solely on a medical reason but after taking cost into consideration. These allegations amount to no more than a disagreement with Dr. Pillai over which medications he should receive.

Moreover, the fact that cost may have entered into the calculus of which psychotropic medications Plaintiff should receive, does not thereby mean that the decision to change Plaintiff's psychotropic medications amounts to deliberate indifference. Although Klonopin

10

may not have been on DOC's formulary,[7] nevertheless, it is apparent that Plaintiff was given that drug for a very long time and that Dr. Pillai, in response to Plaintiff's complaints, even re-prescribed it for him, albeit at levels Plaintiff contends are non-therapeutic. Such considerations of cost cannot, standing alone, be sufficient to evidence deliberate indifference. This is so because "[w]hat we know as men and women . . . we must not forget as judges[,]" Henderson v. Frank, 155 F.3d 159, 164 (3d Cir. 1998), and we know that such a course of treatment, i.e., having formulary drugs that are preferred over non-formulary drugs, is normal for non-incarcerated individuals, who find themselves in an HMO or other similar health insurance coverage with formularies and if such treatment is generally accepted for non-incarcerated individuals then, *a fortiori*, it cannot be said to be violative of the Eighth Amendment. The consideration of cost neither singly nor in consideration with the other considerations, i.e., security, establishes that Dr. Pillai was deliberately indifferent. For the rule is: cost is a legitimate consideration in determining which tests to perform and which treatments to follow. See Ralston v. McGovern, 167 F.3d 1160, 1162 (7th Cir. 1999)("it is difficult to generalize, except to observe that the civilized minimum is a function both of objective need [for the particular test or treatment] and of cost. The lower the cost, the less need has to be shown, but the need must still be shown to be substantial."); Onishea v. Hopper, 171 F.3d 1289, 1300 (11th Cir.

---

[7] "A formulary drug is one on a list of predetermined economical medications that a doctor may prescribe for a condition. A non-formulary drug is one that does not come within the approved list of medications" but may nonetheless ultimately be prescribed if the formulary drugs prove to be ineffective. Rozzelle v. Rossi, 2007 WL 2571935, *1 n. 1 (W.D. Pa. Aug. 31, 2007). See also Dkt. [2-3] at 27 (which is a letter from Dr. Couturier, Chief of Psychological Services addressed to Plaintiff in response to a letter from him inquiring about cost savings to DOC, and the letter notes that the DOC "has been able to save money through a variety of strategies. These include seeking to purchase less-expensive generic medications where appropriate, discouraging the use of substances that are highly addictive in situations where other behavioral strategies might be more appropriate (e.g., to promote sleep), and modifications to the DOC's formulary.").

1999)("Penological concerns such as security and **cost** are legitimate....") (emphasis added). Consideration of the cost in trying alternative treatments simply does not per se deprive a prisoner of the minimal civilized measure of life's necessities. That cost is a factor in the provision of treatment outside the prison walls supports this conclusion. See, e.g., Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir. 1997)("Although it is possible that the fee-based program at issue here may cause some prisoners to refrain from seeking medical treatment as early as they might otherwise do so, the deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society."). Resources are not infinite and reasonable allocation of those resources does not amount to deliberate indifference even if a prisoner does not receive the most costly tests or his treatment of choice or even a treatment recommended by some doctors but disagreed with by other doctors. Accordingly, in placing Plaintiff on a psychotropic medication other than the one he has been on for twenty years and doing so at least in part because of considerations of cost and security, and because cost is a legitimate consideration in choosing medications for non prisoners who find themselves in HMOs and other types of insurance coverage, Dr. Pillai's actions simply do not amount to deliberate indifference. See Furman v. Georgia, 408 U.S. 238, 277 (Brennan, J., concurring) ("punishment must not be unacceptable to contemporary society"). Accordingly, Plaintiff's Eighth Amendment claim must be dismissed for failure to state a claim upon which relief can be granted.

### 2. DOC Defendants and the Eighth Amendment Claim

For all of the reasons that the complaint fails to state an Eighth Amendment claim of deliberate indifference against Dr. Pillai, a fortiori, it fails to state an Eighth Amendment claim against the DOC Defendants and pursuant to the screening provisions of the PLRA, the Eighth Amendment claims against all of the DOC officials should be dismissed for failure to state a claim upon which relief can be granted.

Alternatively, the DOC defendants are entitled to have the Eighth Amendment claim against them dismissed based on the fact that Plaintiff was receiving psychiatric treatment from Dr. Pillai, including psychotropic medications even if those medications were not the one that Plaintiff had been receiving for the last 17 years. This is because, DOC officials, being non-physicians, have no expertise by which to judge whether Plaintiff should be on one psychotropic medication as opposed to another. See, e.g., Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)("The only allegation against either of these two [prison official] defendants was that they failed to respond to letters Durmer sent to them explaining his predicament. Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.")(footnoted omitted); Thomas v. Zinkel, 155 F.Supp.2d 408, 413 (E.D. Pa. 2001)("Prison authorities who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. Similarly, health care administrators cannot be found deliberately indifferent when an inmate is receiving care from a doctor.")(internal citations and quotations omitted). This rule makes sense because a non-physician layperson cannot be deliberately indifferent to a prisoner's medical needs when he knows that the prisoner

is being seen by and treated by physicians, notwithstanding the prisoner's complaints about the physician's treatments because a non-physician layperson has no expertise whereby to judge the adequacy *vel non* of a physician's treatment.

While the DOC Defendants may have known of Plaintiff's complaints about his treatment with psychotropic drugs other than Klonopin, the DOC Defendants had no expertise by which to question the medical determination of Dr. Pillai and so the fact that they deferred to her judgment, even if her decision to change medications was motivated in part by cost considerations of a policy implemented by the DOC defendants, such does not render them liable, given that Dr. Pillai was the prescribing physician and considered the other drugs appropriate for Plaintiff. Moreover, Plaintiff's suggestion that Dr. Pillai was not free to prescribe Klonopin as a consequence of DOC policy is affirmatively disproved by the exhibits he attached to his complaint and by the allegations of the complaint, wherein he asserts that Dr. Pillai did prescribe Klonopin for him albeit at an allegedly non-therapeutic dosage. Accordingly, any Eighth amendment claim against the DOC defendants should be dismissed sua sponte by the court pursuant to the screening provisions of the PLRA for failure to state a claim upon which relief can be granted.

### 3. Dr. Pillai and the Retaliation Claim

Next, Plaintiff complains that Dr. Pillai's request for a separation from Plaintiff was taken in retaliation against him. Plaintiff alleges that on April 2, 2007, he filed a grievance, complaining that the Mental Health Staff had not seen Plaintiff in a long time. Dkt. [39] at 6, ¶ 24. In the very next paragraph, Plaintiff alleges that "[i]n retaliation, on April 6, 2007, Dr. Pillai requested that Plaintiff be placed in 24 hr. segregated lockdown, and transferred to another

14

facility in spite of the fact that prison staff admitted that Plaintiff had not committed any act, threat or disrespectful words against any staff." (some emphases and quotations removed).

It appears that Plaintiff alleges that because he filed a grievance against the mental health staff, which presumably includes Dr. Pillai, she filed a request for a separation from Plaintiff, which request resulted in his placement in segregated housing and the initiation of a transfer of Plaintiff out of SCI-Somerset into another institution. As Defendant Pillai points out in her motion to dismiss, however, Plaintiff failed to exhaust this claim of retaliation against her.

In the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting civil rights actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. See Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). The PLRA amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997e, that required prisoners to exhaust administrative remedies available to them prior to a prisoner bringing suit in federal court concerning prison conditions. See 42 U.S.C. § 1997e(c)(2). See also Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000), aff'd, 532 U.S. 731 (2001). Specifically, the PLRA amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997e, to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has declared that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). See also Booth v. Churner, 206 F.3d at 295 (explaining the statutory phrase "prison conditions" to include claims concerning "actions . . . [that] make their [i.e. prisoners] lives worse."). Thus, the Courts have made clear that any claim about prison life is subject to the exhaustion requirement, thereby interpreting the exhaustion requirement very broadly.

Furthermore, not only is the exhaustion requirement broad, it is also mandatory. The Court of Appeals for the Third Circuit has made clear that Section 1997e(a) "'specifically mandates' that inmate-plaintiffs exhaust their available administrative remedies." Nyhuis v. Reno, 204 F.3d at 73 (internal citations omitted). Therefore, "it is beyond the power of this court ... to excuse compliance with the exhaustion requirement.... Id. Accordingly, the Third Circuit has concluded "[o]ur bright line rule is that inmate-plaintiffs must exhaust all available administrative remedies." Nyhuis, 204 F.3d at 75. Furthermore, institutionalized persons, such as prisoners, must exhaust their administrative remedies even if the administrative remedy cannot provide them with the relief they seek, e.g., money damages. See Nyhuis v. Reno. Because Plaintiff's allegations in the complaint constitute an "action brought with respect to prison conditions" within the meaning of the PLRA, the exhaustion requirement provisions of Section 1997e(a) apply herein.

Defendant Pillai first pointed out that Plaintiff failed to exhaust his administrative remedies against her on the retaliation claim because he did not utilize all three levels of the grievance process available to him under DC-ADM 804. Dkt. [42] at 11 to 12. Plaintiff responded that he did in fact file a grievance concerning Dr. Pillai's alleged retaliation, as well as the alleged retaliation of the PRC committee, which was the committee tasked with determining

the propriety of his placement in administrative segregation pending the disposition of Dr.

Pillai's request for a separation and also possibly, tasked with determining the propriety of the

separation request itself, i.e., whether Plaintiff should be separated from Dr. Pillai and

consequently transferred to another prison.   See Dkt. [46] at 6.  The grievance Plaintiff filed with

respect to Dr. Pillai's alleged retaliation was Grievance No. 184887.  Id.  Plaintiff also filed

grievance No. 184381 against the Program Review Committee also for alleged retaliation or

failure to remedy the retaliation.  Id.  Plaintiff further alleged that the grievance against Dr. Pillai

was dismissed essentially as duplicative of the grievance against the PRC.   Plaintiff then alleges

that he filed all three levels on Grievance No. 184381, the grievance against the PRC.  Plaintiff

notes that the third level response in Grievance No. 184381 was a rejection of the grievance

appeal which noted that because Plaintiff's complaint involved his being housed in

Administrative Custody and being transferred, Plaintiff should not have utilized the DC-ADM

804 grievance procedure but, instead, should have utilized the procedures outlined in DC-ADM

802.  Plaintiff then contends that he did in fact utilize DC-ADM 802 procedures and appealed all

the way to the final appeal level under those procedures.  Id.

To the extent that Plaintiff relies upon the DC-ADM 804 grievance procedure to satisfy

his exhaustion requirement, the court notes that Plaintiff did not file Grievance Number  184887

until April 17, 2007.  Dkt. [46-2] at 5.  Grievance number 184887 was the grievance specifically

complaining of Dr. Pillai's alleged retaliation.  At some point a first level response was provided

Plaintiff, which apparently rejected the grievance because Plaintiff then filed an appeal to

Superintendent Rozum.  Superintendent Rozum then issued his decision on May 8, 2007, which

dismissed the grievance appeal, noting that Grievance Number 184887 that involved allegations

of Dr. Pillai's role in the alleged retaliation was duplicative of Plaintiff's Grievance Number 184381 (which was the grievance against the PRC). Dkt. [46-2] at 6. Although Dr. Pillai asserts that Plaintiff did not file an appeal from Superintendent Rozum's disposition of Plaintiff's appeal, Dkt. [56] at 5, there does not appear any affirmative evidence in the record to establish this proposition and so the Court will not rely thereon. However, to the extent that Plaintiff did not file such an appeal, and to the extent that he would point to Grievance Number 184887 as satisfying his exhaustion requirement, it may well be that he failed to exhaust.

To the extent that Plaintiff would rely on Grievance Number 184381 (the one complaining about alleged retaliation by the PRC and upon which Superintendent Rozum based his rejection of Grievance Number 184887), the court notes that Grievance Number 184381 was not filed until April 11, 2007. See Dkt. [28-2] at 14 (this is the first level response and it noted that the grievance was filed on "4/11/2007" under the heading of "Grievance Date"). The final response to Grievance No. 184381 was dated June 22, 2007. Dkt. [46-2] at 7. It was in this final response to Grievance No. 184381, that the responder indicated that Plaintiff should have utilized the DC-ADM 802 procedures and not the DC-ADM 804 procedures.

To the extent that Plaintiff relies upon the DC-ADM 802 procedures to satisfy exhaustion, the court notes that Plaintiff initiated those procedures on April 10, 2007, by writing to the PRC. Dkt. [28-2] at 3. The PRC issued its decision on April 10, 2007. Dkt. [28-2] at 5. Plaintiff appealed to the Superintendent. Dkt. [28-2] at 6. The Superintendent responded on April 17, 2007. Dkt. [28-2] at 7. On April 20, 2007, Plaintiff appealed to the Chief Hearing

Officer. Dkt. [28-2] at 8. The Chief hearing Officer did not respond to Plaintiff's third level appeal until May 14, 2007. Dkt. [35-4] at 1.[8]

In the meantime, before any of the three above procedures were completed, i.e., before Plaintiff received a response from his second level appeal in the case of Grievance Number 184887, or before he received a final response in the cases of Grievance Number 184381, and/or a final response in the DC-ADM 802 proceedings, Plaintiff executed on May 4, 2007, his amended complaint, Dkt. [17] at 17, which included a claim against Dr. Pillai for her alleged retaliation against him due, allegedly, to his filing of grievances concerning his psychiatric treatment or lack thereof. Dkt. [17] at 3, ¶ 25. The first amended complaint was formally docketed on May 7, 2007, a full week prior to the final level response in the DC-ADM 802 proceedings.

The rule is that "[t]he 'available' 'remed[y]' must be 'exhausted' **before** a complaint under § 1983 may be entertained." Booth v. Churner, 532 U.S. 731, 738 (2001). Accord Dancy v. Collier, __ Fed.Appx. __, __, Slip Copy, 2008 WL 449732, *1 (3d Cir. Feb. 20, 2008)(Non-precedential)("A prisoner who challenges prison conditions must exhaust available administrative remedies **before** filing suit in federal court.")(emphasis added); Oriakhi v. U.S., 165 Fed.Appx. 991, 993 (3d Cir. 2006)("Oriakhi's administrative remedies were not exhausted prior to the initiation of suit. The fact that he completed the administrative review process before the District Court reached the exhaustion question is of no consequence. Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion

---

[8] On May 14, 2007 the Chief Hearing Officer responded by inexplicably stating that Plaintiff had not appealed to the Superintendent and indicated that Plaintiff could not file his final appeal to the Chief Hearing Officer until and unless he first appealed to the Superintendent.

requirement by exhausting administrative remedies after the filing of the complaint in federal court.") ; Thompson v. Michigan Dept. of Corrections, 23 Fed.Appx. 486 (6th Cir. 2001).

> In this respect, Thompson is directly on point.

> In this case, although Thompson submitted documents on appeal indicating that he had filed a grievance challenging Tollefson's alleged improper conduct, he did not establish that he had completely exhausted his remedies before filing his § 1983 suit against Tollefson. The record reflects that Thompson filed his original complaint on November 4, 1997, and that he filed his amended complaint on March 9, 1998. However, the documents that he has submitted to this court clearly reflect that he was still pursuing his administrative remedies in April of 1998. Because Thompson did not exhaust his administrative remedies prior to filing his lawsuit, the district court properly dismissed the claims against Tollefson.

Thompson, 23 Fed.Appx. at 488. Accord Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001)

("Subsequent exhaustion after suit is filed therefore is insufficient."), *overruled on other grounds by*, Porter v. Nussle, 534 U.S. 516(2002); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)

("The plain language of the statute makes exhaustion a precondition to filing an action in federal court . . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); Brower v. Georgia Dept. of Corrections, 2008 WL 282473, *4 n.2 (S.D.Ga. Jan. 31, 2008)("Assuming Plaintiff appealed his grievance to the Commissioner's Office, Plaintiff has still failed to satisfy the exhaustion requirement. According to Plaintiff, he filed a formal grievance, on April 10, 2007. Defendant Washington then had thirty (30) days to issue a written response.  Defendant Donald would have then had ninety (90) days, or until approximately mid-to-late August, 2007, to respond to Plaintiff's appeal. However, Plaintiff commenced this action on May 24, 2007, well prior to deadline set for the Commissioner's Office to respond to any appeal that Plaintiff may have filed.")(citations omitted).

Accordingly, the retaliation claim against Dr. Pillai must be dismissed without prejudice due to Plaintiff's filing of the civil action (i.e., by the filing of the amended complaint) against her prior to having exhausted his administrative remedies with respect to this claim.

For the same reasons, the retaliation/failure-to-remedy-the-retaliation claims against the following DOC defendants should be sua sponte dismissed without prejudice pursuant to the Court's inherent power to control its own docket,[9] or pursuant to the PLRA,[10] due to Plaintiff's failure to exhaust his administrative remedies prior to filing the civil action against them, i.e., prior to filing the amended complaint:  Defendants Wadsworth, Joseph, Hunter, Fultz, Rozum, Bitner and Beard.  See, Dkt. [17] at 5 (listing these seven DOC Defendants as being involved in Plaintiff's claims of retaliation or failure to remedy the retaliation).

The remaining DOC defendants, i.e., Defendants J. Visinsky, A. Fomel, S. Burke and Bureau of Health Care Services, were not identified  in the amended complaint or in the second amended complaint, as the defendants who were involved in Plaintiff's claims of retaliation and/or failure to remedy the retaliation.  Plaintiff appears to complain about these four DOC defendants only in connection with his claims of Eighth Amendment deliberate indifference to his serious medical needs for their failure to assure that he remained on a therapeutic level of Klonopin and/or for  upholding and/or instituting policies that permitted/required Dr. Pillai to not

---

[9]  Chambers v. NASCO, Inc., 501 U.S. 32, 46-47 (1991)(court's inherent power is not displaced by statutes).  See also Huertas v. City of Philadelphia, 188 Fed.Appx. 136  (3d Cir. 2006) and Atwell v. Metterau, 2007 WL 4183080 (3d Cir.  Nov. 28, 2007)(non precedential) and Clifton v. Warnaco, Inc., 53 F.3d 1280 (Table Unpublished), 1995 WL 295863 at *6 n.13 (5th Cir. 1995) (all of the foregoing cases support the proposition that a court may sua sponte raise affirmative defenses in order to dismiss a case where the affirmative defense is clear on the face of the complaint or from other matters that can be properly considered on a motion to dismiss).

[10]  Brown v. Croak, 312 F.3d 109, 111 n.1 (3d Cir.  2002).

prescribe him Klonopin. <u>See</u> Dkt. [2-3] (the original complaint filed in state court, which named all four of these DOC defendants). Because the court has already recommended that the Eighth Amendment claims against all DOC defendants be dismissed with prejudice for failure to state a claim upon which relief can be granted, there remain no viable claims against any of these four DOC defendants. Hence, if the District Court adopts this report, the case should be closed as no claims remain against any of the Defendants.

<u>CONCLUSION</u>

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, written objections are due by March 17, 2008, in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

*/s/ Amy Reynolds Hay*
United States Magistrate Judge


Dated: 1 March, 2008

cc:    Hon. Arthur J. Schwab
      United States District Judge

      Robert Hughes
      AR-4652
      SCI Albion
      10745 Route 18
      Albion, PA 16475

      All counsel of record by Notice of Electronic Filing